IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEON COLEMAN,              *
                           *
        Plaintiff,         *
                           *
v.                         *        Civil No. 12-cv-03801-MAB
                           *
UNITED STATES OF AMERICA,  *
                           *
        Defendant.         *
                           *

## MEMORANDUM OPINION

Plaintiff, Keon Coleman, was injured in a car accident involving a government-owned vehicle driven by Yvette Tuzon, an employee of the United States Office of Personnel Management ("OPM") acting within the scope of her employment. He filed the present action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, claiming damages stemming from Ms. Tuzon's negligence. The United States has conceded liability for the accident, but challenges the damages Plaintiff seeks. After a bench trial on March 4, 2014, the court makes the following findings of fact and conclusions of law.

I. **Summary of the Evidence**

   a. Plaintiff's Pre-Existing Injury

Plaintiff first injured his right forearm in March 2009. (Trial Tr. 14:3-:24, Mar. 4, 2014.) Dr. Richard Barth, an orthopedic surgeon specializing in hand surgery, diagnosed a fracture of the radius combined with dislocation of the articulation of the radius and ulna at the wrist. (*See* Def.'s Ex. 2 (Dr. Richard Barth Dep., Jan. 29, 2014) 5:20-6:6, 6:24-7:12.) On March 16, 2009, he performed a surgery on Plaintiff's forearm to insert a stainless steel plate to stabilize the fracture and facilitate proper healing. (Barth Dep. 6:24-9:4.)

In July 2009, Dr. Barth performed corrective surgery on Plaintiff's arm, replacing the steel plate, because the original plate had bent, preventing the injury from healing correctly. (Barth Dep. 9:6-10:13.)  Dr. Barth saw Plaintiff in August 2009 for a follow-up appointment. (Def.'s Ex. 4; Barth Dep. 10:21-11:15.)  Plaintiff's forearm revealed "evidence of early healing," and he had resumed most normal activities, except for contact sports.  (Def.'s Ex. 4; Barth Dep. 11:5-12:13.)  Plaintiff did not return for a subsequent follow-up with Dr. Barth because he was not experiencing any discomfort.  (*See* Def.'s Ex. 4.)

      b.   The Automobile Accident

On December 7, 2009, Plaintiff was driving a friend to work and then to an appointment. (Trial Tr. 16:9-:24.)  Ms. Tuzon was driving behind him, carrying out government duties, when both cars came to a stop at a traffic light in Crystal City, Virginia.  (Trial Tr. 17:3-:7, 181:23-182:12; Joint Pretrial Order, ECF No. 35.)  While stopped at the light, the GPS device attached to Ms. Tuzon's windshield detached and fell to the floor on the driver's side of the vehicle.  (*See* Trial Tr. 182:3-:15.)  As she attempted to move the GPS with her foot, Ms. Tuzon accidentally hit the accelerator, and her vehicle collided with the back of Plaintiff's stopped car.  (Trial Tr. 182:3-:12.)  Plaintiff slammed his right arm on the steering wheel and dashboard when she rear-ended his car.  (Trial Tr. 17:14-:19.)

While the parties dispute the speed at which Ms. Tuzon's vehicle hit Plaintiff's car, (*compare* Trial Tr. 17:10-:13, *with* Trial Tr. 183:5-:9), the force of the collision was sufficient to bend the metal plate in Plaintiff's arm.  (*See* Def.'s Ex. 4.)  The OPM vehicle sustained no damage, and Plaintiff's car suffered limited damage on its rear bumper, which cost $608.94 to repair.  (Def.'s Ex. 1; *see also* Trial Tr. 183:17-:18.)

c. Plaintiff's Post-Accident Medical Care

After the accident, paramedics examined Plaintiff at the scene. (*See* Trial Tr. 19:9-:10.) Plaintiff then drove himself to Sidley Memorial Hospital, where he complained of pain in his right wrist, neck, and back. (*See* Trial Tr. 19:9-:14; Def.'s Ex. 3.) The emergency room clinicians took X-rays of Plaintiff's neck, back, and forearm and placed a temporary orthopedic splint on his arm. (Def.'s Exs. 3, 4; Pl.'s Ex. 1 at 4.) They treated him for back strain, whiplash, and wrist pain and referred him to Dr. Barth for follow-up. (Def.'s Exs. 3, 4.)

Plaintiff saw Dr. Barth on December 9, 2009, still complaining of neck and wrist pain. (Def.'s Ex. 4.) Dr. Barth examined Plaintiff and reviewed his X-rays from the day of the accident. (Def.'s Ex. 4.) While the X-rays of Plaintiff's back and neck were normal,[1] the X-ray of Plaintiff's forearm revealed that the plate had bent. (*See* Def.'s Ex. 4.) Dr. Barth noted that Plaintiff's re-injury presented "a very difficult problem." (Def.'s Ex. 4.) Dr. Barth reviewed with Plaintiff the potential benefits and risks of leaving the forearm as it was versus having further surgery. (Def.'s Exs. 4, 5.) In particular, Dr. Barth testified that he would have warned a patient that occasionally a plate needs to be taken out and that it can bend and break, requiring further surgery. (Barth Dep. 20:2-:11.) Plaintiff opted to have corrective surgery because he wanted to play football and did not believe that he could with his arm as it was. (*See* Def.'s Exs. 4, 5.) Plaintiff underwent surgery at Sidley Memorial Hospital on December 22, 2009. (Def.'s Ex. 6.) He wore a long-arm cast on his forearm for approximately two months following the surgery. (*See* Pl.'s Ex. 2 at 3-5.)

---

[1] Plaintiff attended physical therapy for two and a half months to address continuing neck and back pain. (*See* Pl.'s Ex. 4.) The expenses associated with this physical therapy are included in the expenses Defendant has stipulated are reasonable, necessary, and directly related to the automobile accident.

3

Initially, Plaintiff recovered well from this surgery. At a March 2010 appointment, Dr. Barth released him to full activities, with the exception of contact sports. (Barth Dep. 25:4-:11; Def.'s Ex. 8.) Plaintiff told Dr. Barth that he would like to resume playing football over the summer, and Dr. Barth indicated that Plaintiff could do so if he wished, but that there was the possibility of re-fracturing the arm around the plate. (Barth Dep. 25:4-:11; Def.'s Ex. 8.)

Plaintiff did not return to Dr. Barth again until October 2013. At that time, Plaintiff complained of soreness in his forearm and asked to have the plate removed. (Def.'s Ex. 10.) Dr. Barth examined Plaintiff's forearm and found a "very thickened scar" over the wrist. (Def.'s Ex. 10.) X-rays revealed no abnormalities except some bony overgrowth, which Dr. Barth testified was not indicative of a problem. (Barth Dep. 33:4-:16; Def.'s Ex. 10.) Dr. Barth recommended against removing the plate as long as Plaintiff planned to play football, and Dr. Barth believed that Plaintiff was "comfortable with this approach." (Def.'s Ex. 10.)

Plaintiff returned to see Dr. Barth in January 2014, adamant that he wanted the plate removed because of ongoing discomfort. (Def.'s Ex. 11.) Dr. Barth testified that some patients do not tolerate plates well and that he would remove plates for those who complain of discomfort if that person wishes to have the plate removed and does not plan to engage in contact sports. (*See* Barth Dep. 37:6-38:24.) In such cases, he will educate the patient about the risks of removing the plate and leave the decision to the patient. (Barth Dep. 37:6-38:24.) With Plaintiff, Dr. Barth followed this course. (Def.'s Ex. 11.) He reviewed with Plaintiff the benefits and risks of removing the plate and left the decision "completely up to him." (Barth Dep. 44:21-47:20; Def.'s Ex. 11.) Plaintiff indicated that he would like to have surgery in June 2014, after he finishes his graduate program examinations. (Def.'s Ex. 11; *see also* Trial Tr. 86:14-87:4.) Dr. Barth anticipates charging Plaintiff approximately $10,000 to have the plate removed from

his forearm, and Sidley Memorial Hospital estimates that it will charge an additional $6,700 for the surgery. (Pl.'s Ex. 7.)

        d.   Lost Job Opportunity

At the end of November 2009, prior to the car accident, Plaintiff received an offer from an acquaintance, Rahman Hilton, to work for him managing certain FedEx Ground delivery routes. (Trial Tr. 116:22-117:16, 121:13-122:20, 123:6-:11.) Mr. Hilton's manager was leaving, and Mr. Hilton needed to replace him before the peak season delivery rush. (*See* Trial Tr. 121:17-:23, 124:14-125:6, 135:22-:25.) Mr. Hilton testified that he was aware that Plaintiff could not perform heavy lifting because of an injury to his right forearm. (Trial Tr. 130:3-:6, 161:3-162:23, 173:18-174:16.) Because the manager job required driving, but no lifting, Mr. Hilton did not feel that the injury would prevent Plaintiff from fulfilling all job requirements. (Trial Tr. 130:3-:6, 161:3-162:23, 173:18-174:16.) Mr. Hilton offered Plaintiff the job with a yearly salary of $67,600 and agreed that Plaintiff could begin work on December 8, 2009. (Trial Tr. 121:24-122:2, 129:25-130:2; *see also* Pl.'s Ex. 6.)

Plaintiff re-injured his arm in the traffic accident the day before he was to begin work for Mr. Hilton. (Def.'s Ex. 3; Trial Tr. 16:9-:24, 17:14-:19.) The injury required him to wear an orthopedic splint following the accident. (Pl.'s Ex. 1 at 4.) As a result, Plaintiff could not drive, as the job required, preventing him from starting work as planned. (Trial Tr. 110:19-:25, 129:18-:24, 170:20-:24; Def.'s Ex. 14.) Mr. Hilton testified that he was unable to hold the position open for Plaintiff while the injury healed. (Trial Tr. 108:9-:23, 125:4-126:6.)

e. Plaintiff's FTCA Administrative Claim and the Present Action

On November 3, 2010, Plaintiff filed an administrative claim for $64,984.43 in damages stemming from the accident. Specifically, he sought $21,204.43 for past medical expenses, $13,780 for lost wages, and $30,000 for pain and suffering. (Def.'s Ex. 9.)

On December 6, 2011, Plaintiff filed the Complaint in the present action,[2] (*see* ECF No. 1), seeking over $200,000 in damages, plus costs and interest, well in excess of the amount he requested in his administrative claim. (*See* Compl.; *see also* Def.'s Ex. 9.) Plaintiff seeks $22,003.93 in past medical expenses, $17,000 for future medical expenses, and $67,000 in lost wages. (Joint Pretrial Order 3.) Though the record is unclear, Plaintiff presumably has increased the amount he seeks for pain and suffering from the $30,000 sought in the administrative claim to $93,996.07, bringing the total to the $200,000 sought in this action. (*See* Compl.; *see also* Joint Pretrail Order 3.) The increased amount he seeks in pain and suffering ostensibly covers the renewed discomfort he is suffering from the plate, the pain of future surgery, and anxiety that Plaintiff claims he has suffered since the accident. (*See* Compl. ¶¶ 13, 18, 23; *see also* Trial Tr. 52:5-:20.)

f. Stipulations of Fact

The parties stipulate that the United States is liable for the negligence of Ms. Tuzon, who was acting within the scope of her employment when the accident occurred. (*See* Joint Pretrial Order 1-2.) The parties further stipulate that the medical care Plaintiff received from December 7, 2009 through March 17, 2010 was reasonable, necessary, and directly related to the injuries Plaintiff sustained in the accident. (Joint Pretrial Order 2.)

---

[2] Plaintiff originally filed this action in the Superior Court for the District Columbia on December 6, 2011. The case was removed to the District Court for the District of Columbia in September 2012. (*See* Notice of Removal, ECF No. 1.) On December 10, 2012, that court granted Defendant's Motion to Transfer the case to the District Court of Maryland. (*See* ECF Nos. 4-6.)

## II. Summary of Applicable Law

The FTCA permits an individual to institute an action against the United States for money damages for injury caused by the negligence of a government employee acting within the scope of her employment after the individual has filed a claim with the appropriate federal agency and that claim has been denied or remains unresolved after six months. *See* 28 U.S.C. § 2675(a); *Chang-Williams v. United States*, 965 F. Supp. 2d 673, 698-99 (D. Md. 2013). The United States may raise failure to exhaust administrative remedies under the FTCA as an affirmative defense. *See Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005); *see also Morris v. United States*, No. 12-cv-73, 2012 WL 6048936, at *4 (N.D. W. Va. Dec. 5, 2012).

An action under the FTCA may not seek more in damages than the amount sought in the original administrative claim unless "newly discovered evidence" or "intervening facts" justify additional damages. 28 U.S.C. § 2675(b). "[P]ermitting a tardy increase in the damages claimed would impair the government's ability to assess a claim's settlement value accurately, which is the very purpose of the 'sum certain' requirement imposed on FTCA administrative claimants." *Chang-Williams v. United States*, No. 10-cv-0783, 2011 WL 2680714, at *4 (D. Md. July 7, 2011) (citing *Kokotis v. U.S.P.S.*, 223 F.3d 275, 278 (4th Cir. 2000)). Thus, a plaintiff bears the burden of justifying the right to additional damages. *Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990) (citations omitted).

"While there is a split among the Circuits over precisely what constitutes 'newly discovered evidence' or 'intervening facts,' the United States Court of Appeals for the Fourth Circuit has adopted the approach more favorable to the injured party." *Murphy v. United States*, 833 F. Supp. 1199, 1203-04 (E.D. Va. 1993) (citing *Spivey*, 912 F.2d 80). In the Fourth Circuit,

a plaintiff may seek damages beyond those sought in the administrative claim if his condition worsens after filing the claim, even if that possibility is known at the time of filing. *See Spivey*, 912 F.2d at 85-86; *accord Michels v. United States*, 31 F.3d 686 (8th Cir. 1994).

In addition, as in any other tort case, a plaintiff must demonstrate entitlement to damages stemming from the government employee's negligence. Under Virginia law,[3] a plaintiff must prove that the alleged negligent conduct probably caused plaintiff's injuries. *Doherty v. Aleck*, 641 S.E.2d 93, 97 (Va. 2007) (observing that law of causation "deals in probabilities"); *accord Murray v. United States*, 215 F.3d 460, 463 (4th Cir. 2000). Thus, a plaintiff may recover for all past and future medical expenses "provided these items are proved with reasonable certainty," subject to causation. *Corrigan v. United States*, 609 F. Supp. 720, 732 (E.D. Va. 1985) (citing *Hailes v. Gonzales*, 207 Va. 612 (1966)), *rev'd on other grounds*, 815 F.2d 954 (4th Cir. 1987). Likewise, a defendant who causes injuries to a plaintiff with a preexisting condition is liable for any exacerbation of that condition caused by her tortious conduct. *Bradner v. Mitchell*, 362 S.E.2d 718, 722 (Va. 1987); *Creech v. United States*, No. 6-cv-00279, 2007 U.S. Dist. LEXIS 49692, at *19-20 (E.D. Va. July 10, 2007).

In assessing damages, the trier of fact may consider (1) any bodily injuries the plaintiff sustained according to their degree and likely duration; (2) any physical pain or mental anguish the plaintiff suffered and may suffer in the future; (3) any disfigurement, deformity, and any associated humiliation or embarrassment; (4) any past and future inconvenience; (5) any medical expenses the plaintiff incurred or may reasonably incur in the future; (6) any earnings the

---

[3] Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, courts typically apply the law of the state in which the alleged negligent act occurred to determine the availability of damages. *Roark v. United States*, 456 F. Supp. 2d 739, 742 (W.D. Va. 2006); *accord Creech v. United States*, No. 6-cv-00279, 2007 U.S. Dist. LEXIS 49692, at *18 (W.D. Va. July 10, 2007). Virginia law applies to this case because the accident at issue occurred in Virginia. (Trial Tr. 17:3-:7, 181:23-182:12.)

plaintiff lost because he was unable to work at his calling; (7) any loss of earnings that he may reasonably sustain; and (8) any property damage. *See* Virginia Model Jury Instructions – Civil, Instr. No. 9.000 (2007); *accord Creech*, 2007 U.S. Dist. LEXIS 49692, at *18-19. The trier of fact may not, however, discount any recovery to reflect expenses covered or written-off by insurance, gifts, or the operation of law. *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 251 (Va. 2002) (noting that collateral source rule precludes tortfeasor from benefitting from any payment made by third-party to tort victim); *accord Wright v. Smith*, 641 F. Supp. 2d 536, 542-43 (W.D. Va. 2009); *see also* Restatement (Second) of Torts § 920A cmt. b (1979).

### III. Findings of Fact and Conclusions of Law

Having considered the aforementioned evidence, the court makes the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure:

1. The Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1).

2. Plaintiff first injured his right forearm in March 2009. An orthopedic surgeon, Dr. Barth, inserted a steel plate in Plaintiff's arm at that time. He performed corrective surgery to replace the steel plate in July 2009. Thereafter, the injury was healing well, and Dr. Barth released Plaintiff to resume most normal activities, except playing contact sports. Plaintiff did not experience any discomfort from his plate over that summer or fall and had resumed most activities, including weight lifting, other than football.

3. Plaintiff planned to begin a job managing FedEx Ground delivery routes on December 8, 2009. Mr. Hilton needed to replace his manager prior to peak season (post-Thanksgiving, early December) and offered Plaintiff the position with an annual salary of

9

$67,600. The job did not require Plaintiff to do heavy lifting, but required him to drive occasionally. Mr. Hilton was aware of Plaintiff's pre-existing injury, but did not believe it would prevent him from meeting any requirements of the job.

4. On December 7, 2009, Plaintiff was injured in a car accident in Crystal City, Virginia, when a vehicle driven by Ms. Tuzon collided with Plaintiff's stopped car at a traffic light. The government has stipulated to liability for this accident because Ms. Tuzon was acting within the scope of her employment as a federal employee. When his car was hit, Plaintiff slammed his right arm against the steering wheel and the dashboard. Ms. Tuzon's vehicle sustained no damage, and Plaintiff's car suffered only minor damage on its rear bumper, which cost $608.94 to repair.

5. Emergency room clinicians performed X-rays on Plaintiff's neck, back, and wrist and referred him to Dr. Barth for follow-up.

6. Plaintiff was unable to report to work for Mr. Hilton as a result of the injuries sustained in the automobile accident.

7. Dr. Barth determined that the impact of the accident had bent the steel plate in Plaintiff's forearm. Dr. Barth discussed the risks and benefits of a third surgery. While Dr. Barth indicated that future surgery remained a possibility, there was no indication that Plaintiff would suffer long-term discomfort from the replacement of the plate.

8. On December 22, 2009, Dr. Barth performed corrective surgery on Plaintiff's arm to replace the bent plate. Dr. Barth saw Plaintiff again in March 2010 and found that his arm was healing well.

9. Plaintiff filed his FTCA administrative claim on November 3, 2010, seeking $64,984.43 in damages, including $21,204.43 for past medical expenses, $13,780 for lost wages, and $30,000 for pain and suffering.

10. Plaintiff filed this action on December 6, 2011, seeking $200,000 in damages, including $22,003.93 for past medical expenses and $67,600 for lost wages. Plaintiff apparently seeks the difference to cover pain and suffering and future medical expenses.

11. In October 2013, Plaintiff returned to see Dr. Barth, indicating discomfort with the plate and seeking to have it removed. Dr. Barth recommended against removing it if Plaintiff planned to play football in the future, and Plaintiff initially agreed to that approach. However, in January 2014, Plaintiff returned to Dr. Barth, again requesting to have the plate removed to remedy ongoing discomfort. Dr. Barth left the decision to Plaintiff, and Plaintiff indicated he would like to proceed with surgery in June 2014, after he finishes his final examinations for graduate school. This surgery is expected to cost approximately $16,700.

12. Based on the evidence presented at trial, including medical records and the deposition of Dr. Barth, the court finds that Plaintiff suffered compensable injuries as a result of the accident. The accident caused Plaintiff to suffer from short-term back and neck pain. The accident also re-injured Plaintiff's right forearm. The parties have stipulated that Plaintiff's medical bills from December 7, 2009 through March 17, 2010 are reasonable, necessary, and directly related to the injuries Plaintiff sustained in the accident. Therefore, Plaintiff may recover the $21,204.43 for past medical expenses he sought in his administrative claim. Plaintiff has not presented any "newly discovered evidence" to justify increasing the amount he can recover for past medical expenses from the $21,204.43 sought in the administrative claim to the

$22,003.93 he sought in his complaint, and that difference is denied. *See Murphy*, 833 F. Supp. at 1203-04 (citing *Spivey*, 912 F.2d 80).

13. Plaintiff also may recover $13,780 for the lost wages he sought in his FTCA administrative claim. Plaintiff has met his burden of establishing that he was due to begin working for Mr. Hilton on December 8, 2009 at a salary of $67,600 per year. While Mr. Hilton's testimony was sometimes confused as to the chronology of events around the time of Mr. Coleman's accident, his testimony was credible as to his need for a manager at that time, his familiarity with Mr. Coleman's qualifications, and his offer of employment to Mr. Coleman. The $13,780 represents approximately 2.5 months of wages and is consistent with the medical evidence regarding the amount of time Mr. Coleman would have been unable to perform duties consistent with the job offered to him.

14. Plaintiff may not recover any additional lost wages related to the job he lost with Mr. Hilton. The FTCA bars a Plaintiff from recovering an amount in excess of his administrative claim absent "newly discovered evidence" or "intervening facts." *See id*. Plaintiff filed his administrative claim in November 2010, eleven months after the accident. At the time he filed the administrative claim, Plaintiff was aware that he had lost the job with Mr. Hilton, but he limited his claim to 2.5 months of wages. Mr. Coleman did not claim or establish any "intervening facts" or "newly discovered evidence" to justify increasing the amount of lost wages he seeks in this action and any such increase is denied. *See id.*

15. The United States has stipulated to liability for the accident, and the parties do not dispute the validity of medical records that demonstrate that Plaintiff suffered from neck and back pain and re-injury of his right forearm. Following the accident, Plaintiff underwent physical therapy for approximately 2.5 months to alleviate the pain in his neck and back. In

addition to the forearm pain suffered immediately after the accident, Plaintiff endured the pain and suffering of being in a long-arm cast for approximately two months following surgery. While Plaintiff claimed to suffer from anxiety following the accident, he did not provide evidentiary support for this claim at trial, and the court denies any recovery related to anxiety. Taking into account Plaintiff's testimony and evidence relating to past pain and suffering, the court awards Plaintiff $20,000 for past pain and suffering.

16. Plaintiff may also recover $16,700 for the surgery to remove the plate in his arm planned for June 2014. Though Plaintiff did not include this amount in his FTCA claim, he has established that he developed renewed discomfort in his arm after he filed this claim. He has thus sustained his burden of demonstrating "newly discovered evidence" to justify increasing his recovery. *See id*. He has also sustained his burden of proving causation and the amount of medical expenses the surgery will entail with reasonable certainty. *Doherty*, 641 S.E.2d at 97; *accord Murray*, 215 F.3d at 463; *Corrigan*, 609 F. Supp. at 732; *Creech*, 2007 U.S. Dist. LEXIS 49692, at *19. Plaintiff has submitted evidence sufficient to support only $16,700 in damages, not the $17,000 requested. (*Compare* Pl.'s Ex. 7, *with* Joint Pretrial Order 3.)

17. Plaintiff did not provide evidence or testimony related to any recovery time associated with the future surgery. While Plaintiff is suffering some present discomfort that creates the need for surgery, Plaintiff continues to attend graduate school and is willing to defer surgery to a more convenient time. Consequently, the court awards Plaintiff $1,000 in damages for current pain and suffering associated with the need for and receipt of future surgery.

18. Plaintiff failed to produce evidence to support any recovery of lost wages beyond what he sought in his administrative claim. The exhibits and trial testimony do not establish Plaintiff's job plans for this summer, after he completes his graduate school examinations; what

he could expect to earn; nor how long he will be unable to work due to the June 2014 surgery. Consequently, the court denies damages for lost wages associated with the future surgery.

19.     The FTCA does not provide the waiver of sovereign immunity requisite for an award of attorneys' fees. *See generally* 28 U.S.C. §§ 2671-2680. The FTCA also precludes the recovery of pre-judgment interest. 28 U.S.C. § 2674. However, Plaintiff may recover post-judgment interest in accordance with 28 U.S.C. § 1961 and 31 U.S.C. § 1304(b)(1)(A). The court awards Plaintiff such post-judgment interest as may accrue in accordance with 28 U.S.C. § 1961 and 31 U.S.C. § 1304(b)(1)(A). The parties shall bear their own costs and fees.

## IV.     Conclusion

Considering all of the above, the court concludes that Plaintiff is entitled to compensatory damages in the amount of $72,684.43 plus post-judgment interest.

                                                          /s/
                                                    Mark A Barnett
                                                         Judge

Dated: April 23, 2014